UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRAVIS TAAFFE,

    Plaintiff,

v.                                                   Case No: 8:20-cv-513-T-36SPF

ROBINHOOD MARKETS, INC.,
ROBINHOOD FINANCIAL LLC, and
ROBINHOOD SECURITIES, LLC,

    Defendants.
_____/

# **O R D E R**

This cause comes before the Court on Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction and Incorporated Memorandum of Law in Support Thereof (the "Motion"), (Doc. 10), and Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, (Doc. 12). The Court, having considered the parties' submissions and being fully advised in the premises, will deny the Motion.

**I.    BACKGROUND[1]**

Robinhood Markets, Inc., Robinhood Financial LLC, and Robinhood Securities, LLC (collectively, "Robinhood" or "Defendants") provide an internet/cloud-based platform for users[2] to trade in stocks, funds, and options. (Doc. 1 ¶8). Robinhood provides these services to users through a mobile phone application. *Id.* at ¶9.

---

[1] The Background is based on the facts as alleged in Plaintiff's Class Action Complaint (the "Complaint"), (Doc. 1), as well as facts alleged in the Motion, (Doc. 10).

[2] Plaintiff consistently refers to "customers and/or users" throughout the Complaint, but the Court will refer to this group as "users" for ease of reference.

On Monday, March 2, 2020, the Dow Jones Industrial Average rose by over 1,294 points, the S&P 500 rose by over 136 points, and the Nasdaq rose by 384 points. *Id.* at ¶10. This increase represented "the largest point gain in a single day for all three stock market indices." *Id.* However, Robinhood advised its users in a March 2, 2020 e-mail that, beginning that morning at 9:33 a.m. EST, Robinhood "started experiencing downtime across our platform. These issues are affecting functionality on Robinhood, including your ability to trade." *Id.* On March 3, 2020, at 2:19 a.m., Robinhood publicly announced, "Robinhood is currently back up and running. We're testing through the night, and you may observe some downtime as we prepare for tomorrow." *Id.* at ¶12. Significantly, Robinhood's users, including Travis Taaffe ("Plaintiff"), were unable to access Robinhood's platform to engage in trading activity, access their funds on the platform, transfer funds onto the system, or transfer funds off of the system for all but three minutes of the New York Stock Exchange trading hours on March 2, 2020. *Id.* at ¶13.

On March 3, 2020, Robinhood's co-CEOs explained that the "cause of the outage was stress on [Robinhood's] infrastructure—which struggled with unprecedented load," which subsequently resulted in a "thundering herd" effect that "triggere[d] a failure of [Robinhood's] DNS system." *Id.* at ¶14. Robinhood's platform experienced additional outages on March 3, 2020. *Id.* at ¶13. Plaintiff initiated this lawsuit on March 4, 2020, lodging three claims against Defendants: breach of contract, breach of implied warranty of merchantability, and negligence. *Id.* at ¶¶28–37.

On March 26, 2020, Plaintiff filed the Motion, in which he seeks "the issuance of an emergency temporary restraining order and preliminary injunction" against Defendants. (Doc. 10 at 1). Plaintiff asserts that Robinhood has offered its users a "goodwill credit of $75" in exchange for their signatures on a "DocuSign" document within the thirty-six hours preceding Plaintiff's

filing of the Motion. *Id.* at 2–3. Plaintiff further claims that this "DocuSign" document includes a complete waiver of rights, which Robinhood fails to identify or otherwise reference for its users. *Id.* at 3. Plaintiff provides a copy of the allegedly misleading communications. (Doc. 10-1 at 3–5). The first communication is an e-mail, which provides, in relevant part:

> Thanks so much for your patience as we evaluated the impact of the outage on your account. Based on our review, we're able to offer you a goodwill credit of $75.00. To accept this offer, please review and sign the agreement that will be sent to you from Robinhood via DocuSign, which includes references to your incoming credit.

*Id.* at 3.

Plaintiff also provides a copy of the "DocuSign" document, entitled "Short-Form Release, which states that Robinhood offers a one-time payment in an undescribed amount "in satisfaction of any and all alleged losses or claims that you may have in connection with interruptions to trading operations of Robinhood occurring on or about March 2, 2020, and/or March 3, 2020." *Id.* at 4. The document further provides:

> Robinhood offers this payment in full satisfaction of any alleged losses that you may have experienced or claims you may have against Robinhood or any of its parents or affiliates and their respective employees and directors arising from or in any way related to the interruptions to trading operations referenced above, without any admission of liability. By signing below, you agree to release Robinhood with respect to any and all such alleged losses and claims as a condition of accepting the offered payment.

*Id.* at 5.

Plaintiff argues Robinhood seeks to mislead the putative class members into "unknowingly" waiving their rights to participate in the instant putative class action in exchange for a $75 credit. (Doc. 10 at 4). Plaintiff points out that neither the letter nor the release mentions the instant action. *Id.* Further, according to Plaintiff, the system outages caused substantial

3

monetary damages to putative class members, with "many" putative class members sustaining damages in the amount of "tens of thousands of dollars." *Id.*

Plaintiff contends that putative class members will suffer severe and irreparable harm by "unwittingly forfeiting their rights in exchange for inadequate relief and no programmatic relief," unless the Court immediately enjoins Robinhood. *Id.* To that end, Plaintiff requests the Court to: (1) enjoin Robinhood from sending any additional "misleading" communications to prospective class members; (2) require Robinhood to notify each prospective class member of the instant action and provide Plaintiff's counsel with contact information for each prospective class member, including the e-mail address of each prospective class member; and (3) require that any releases entered into by Robinhood and prospective class members "be voided," with prospective class members receiving an opportunity to "affirm" any release after receiving notice of the instant action and an opportunity to consult with counsel. *Id.* at 1–2. Plaintiff seeks relief under Rule 23(d) and Rule 65 of the Federal Rules of Civil Procedure. *Id.* at 1.

## II. LEGAL STANDARD

### A. Rule 23(d)

Rule 23 governs class actions in federal court. Fed. R. Civ. P. 23. The Court maintains "both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). As such, "the Court bears the responsibility under Rule 23(d) to preserve the integrity of the class action." *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 560 (S.D. Fla. 2008). To that end, Rule 23(d) authorizes the court to issue certain orders in conducting a class action, such as orders that (i) require providing appropriate notice to some or all class members of any step in

the action; (ii) "impose conditions on the representative parties or on intervenors"; or (iii) "deal with similar procedural matters." Fed. R. Civ. 23(d)(1).

However, certain circumstances must exist before the Court may limit a party's communications with potential class members. *See Gulf Oil*, 452 U.S. at 101–102. Specifically, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. "Only such determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23." *Id.* at 101–102.

The Court has emphasized:

> "[T]he moving party must present an evidentiary showing of actual or threatened abuse sought to be restrained. Two kinds of proof are required. First, the movant must show that a particular form of communication has occurred or is threatened to occur. Second, the movant must show that the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation.

*Abdul-Rasheed v. KableLink Commc'ns, LLC*, No. 8:13-cv-879-T-24MAP, 2013 WL 5954785, at *6 (M.D. Fla. Nov. 7, 2013) (Bucklew, J.) (quoting *Cox Nuclear Medicine v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 697–98 (S.D. Ala. 2003)).

Types of communications that have been recognized to violate Rule 23 include "misleading communications to class members regarding the litigation, communications that misrepresent the status or effect of the pending action, communications that coerce prospective class members into excluding themselves from the litigation, and communications that underline cooperation with or confidence in class counsel." *Jones*, 250 F.R.D. at 561. Finally, as these types of orders often raise First Amendment concerns, "an order limiting communications regarding ongoing litigation between a class and class opponents will satisfy [F]irst [A]mendment concerns if it is grounded in

5

good cause and issued with a heightened scrutiny" for such concerns. *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1205 (11th Cir. 1985).

### B. Rule 65

Rule 65 permits the Court to enter a preliminary injunction or temporary restraining order. Fed. R. Civ. P. 65. However, "[t]he issuance of a temporary restraining order or preliminary injunctive relief is an extraordinary remedy to be granted only under exceptional circumstances." *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1186 (N.D. Ala. 2001) (citing *Sampson v. Murray*, 415 U.S. 61 (1974)). To obtain a temporary restraining order or preliminary injunction, the movant must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

The Local Rules also require a motion for a temporary restraining order to "contain or be accompanied by a supporting legal memorandum or brief." Local R. M.D. Fla. 4.05(b)(3). This motion should "be accompanied by a proposed form of temporary restraining order prepared in strict accordance with the several requirements" in subsections (b) and (d) of Rule 65. *Id.* The motion must address, among other issues, the threatened injury's irreparable nature and the reason why notice cannot be given. Local R. M.D. Fla. 4.05(b)(4).

Additionally, the Court may issue a temporary restraining order or preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Relatedly, the Local Rules require a motion for a temporary restraining order to

"set forth facts on which the Court can make a reasoned determination as to the amount of security which must be posted pursuant to Rule 65(c)" of the Federal Rules of Civil Procedure. Local R. M.D. Fla. 4.05(b)(3).

Finally, although the Court may issue a temporary restraining order with or without notice to the adverse party, the Court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a)–(b); Local R. M.D. Fla. 4.06(a). The party seeking a preliminary injunction must "fully comply" with the procedural requirements pertaining to temporary restraining orders in Rule 4.05(b)(1)–(5). Local R. M.D. Fla. 4.06(b)(1). The Court has denied requests for preliminary injunctions when these procedural requirements are not met. *See*, *e.g.*, *Julian v. Exlites Holdings Int'l, Inc.*, No. 8:16–cv–2774–T–36AEP, 2017 WL 2869653, at *2 (M.D. Fla. Jan. 17, 2017) (Honeywell, J.).

### III.    ANALYSIS

Because Plaintiff seeks relief under Rules 23(d) and 65 of the Federal Rules of Civil Procedure, the Court will address each basis for relief. For the reasons set forth below, Plaintiff's requests for relief are due to be denied.

#### A.  Rule 23(d)

Bringing this action on behalf of a putative class, Plaintiff now seeks injunctive relief under Rule 23(d). A party requesting injunctive relief under Rule 23(d) need not satisfy the requirements of Rule 65. *See Kleiner*, 751 F.2d at 1202 (upholding the lower court's orders, despite their failure to comply with the requirements of Rule 65, because, as the lower court correctly explained that its rulings were grounded in the court's inherent power to manage its cases and direct counsel as officers of the court, "[t]he more relaxed prerequisites" of Rule 23 applied"). The parties do not point to, nor has the Court found, any binding precedent that prevents the Court from considering

7

Plaintiff's requested relief before a class is certified. Indeed, in *Gulf Oil*, the Supreme Court examined communications sent to prospective class members during a class action's pendency. 452 U.S. at 91. Courts inside and outside the Eleventh Circuit have examined requests for relief similar to the request in the Motion before class certification. *E.g.*, *Jones*, 250 F.R.D. at 556; *Cox Nuclear Med.*, 214 F.R.D. at 698; *Tolmasoff v. Gen. Motors, LLC*, No. 16-11747, 2016 WL 3548219, at *1 (E.D. Mich. June 30, 2016). For those orders authorizing a plaintiff's communication with potential class members—admittedly a slightly different issue— the Eleventh Circuit has nonetheless cautioned: "While we cannot say that orders authorizing communication with potential class members may never precede class certification, district courts must strive to avoid authorizing injurious class communications that might later prove unnecessary . . . ." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997). The Court accordingly will examine Plaintiff's requested relief under Rule 23(d).

As described above, to obtain relief under Rule 23(d), Plaintiff, as the movant, "must present an *evidentiary showing* of actual or threatened abuse sought to be restrained," for which "[t]wo types of *proof* are required." *Abdul-Rasheed*, 2013 WL 5954785, at *6 (emphasis added). First, Plaintiff must demonstrate that "a particular form of communication has occurred or is threatened to occur." *Id.* Next, Plaintiff must demonstrate "that the particular form of communication at issue is abuse in that it threatens the proper functioning of the litigation." *Id.*

The question, therefore, is whether a "clear record" exists reflecting a need for Plaintiff's requested limitation and, relatedly, whether Plaintiff has sufficiently presented an evidentiary showing of an actual or threatened abuse regarding Defendants' communications. Plaintiff offers only two pieces of evidence: (1) the declaration of Jared Ward ("Ward"), which includes a copy

of the subject communications as exhibits; and (2) the declaration of Plaintiff's counsel. (Docs. 10-1, 10-2).

As to the first required type of proof, Ward's declaration includes a copy of Defendants' communication advising of the $75 "goodwill credit" offer, as well as the release. (Doc. 10-1 at 3–5). In an accompanying declaration, Plaintiff's counsel states that "[m]any users" have contacted him and his law firm regarding the goodwill credit. (Doc. 10-2 ¶7). Defendants, in their response, do not dispute that they communicated with users, but rather dispute the purpose of the communications. As such, the Court finds that "a particular form of communication has occurred." *Abdul-Rasheed*, 2013 WL 5954785, at *6.

However, Plaintiff also must demonstrate that Defendants' communications constitute an abuse because they threaten "the proper functioning of the litigation." *Id.* Ward states that he did not know whether the $75 offer was part of the instant action, but, upon reading the document referenced in Defendants' e-mail, he realized that Defendants were seeking a release in exchange for the $75 credit. (Doc. 10-1 ¶¶9–10). On this basis, Ward asserts that the $75 credit constitutes a "misleading attempt" by Defendants to "extinguish" his claim. *Id.* at ¶11. Further, according to Plaintiff's counsel, the "many users" who contacted him and his law firm about the goodwill credit were "confused and upset." (Doc. 10-2 ¶7). The declaration does not explicitly state that the communications misled these "users" or the basis for their confusion. Nonetheless, the declaration concludes that Defendants' "misleading communications to putative class members are intended to obtain unknowing waivers of claims" because Defendants do not mention the instant action or instruct recipients to contact legal counsel regarding their rights. *Id.* at ¶10.

In response, Defendants assert that their communications are "not intended to interfere in any way with this putative class action or the right of any Robinhood customer to participate as a

member of any prospective plaintiff class." (Doc. 12 at 2). Rather, according to Defendants, the release "is intended to relate only to *individual* lawsuits and not to any *class* claims that are asserted in this lawsuit" or other actions. *Id.* (emphasis in original). Indeed, Defendants assert that, "at the appropriate time," they are "prepared to enter into a stipulation" stating that they will "enforce releases only in the context of individual lawsuits or arbitrations—*i.e.*, disputes outside the class action context." *Id.* at 4.

Here, Plaintiff has failed to establish a *clear record* of abusive communications from Defendants. Plaintiff asks the Court to find, as a matter of law, that Defendants' communications are "misleading" based on the declaration of merely one individual, apparently a prospective class member, and Plaintiff's counsel. Plaintiff offers no other evidence. While not providing any evidence in response, perhaps as a result of the purported "emergency" nature of Plaintiff's request, Defendants' response nonetheless makes clear that a dispute exists regarding the purpose of the communications. In light of the two declarations and Defendants' response thereto, a clear record demonstrating that Defendants' communications threaten the litigation's proper functioning does not presently exist. For example, the posture of this action is significantly different from that of *Friedman v. Intervet Inc.*, one of the many non-binding cases upon which Plaintiff heavily relies, in which that court found that a "clear record" existed based upon "two sample complainant affidavits, letters and releases, an affidavit from defendant's employee, and defendant's failure to contest that it did not inform complainants of th[e] putative class action before securing settlements or releases from them." 730 F. Supp. 2d 758, 763 n.4 (N.D. Ohio 2010).

Further, obtaining this requested relief under Rule 23(d) necessarily requires Plaintiff, as the moving party, to make an evidentiary showing. Unsurprisingly, then, courts—including this Court—have held hearings on motions requesting similar relief under Rule 23(d) as the instant

Motion. *E.g.*, *Abdul-Rasheed*, 2013 WL 5954785, at *6 ("Under this framework, the Court will hold an evidentiary hearing to further address this motion."); *Jones*, 250 F.R.D. at 556 (stating that the court "also heard argument from counsel during a hearing" on the motion); *Tolmasoff*, 2016 WL 3548219, at *1 (stating that the court held a hearing on the motion); *see also Cordova v. R&A Oysters, Inc.*, No. 14-0462-WS-M, 2015 WL 4523998, at *2 (S.D. Ala. July 27, 2015) (recognizing that, although the parties had not requested an evidentiary hearing, they had provided for review "affidavits, declarations and other evidence in support of their respective positions"). But Plaintiff does not request an evidentiary hearing. Instead, he asks this Court to rush to an evidentiary determination and issue injunctive relief immediately based on an undeveloped record. The Court declines this invitation.

Therefore, because Plaintiff has not established a clear record of abusive communications on behalf of Defendants, the Court declines to enter the requested relief under Rule 23(d).[3]

### B. Rule 65

#### i. Temporary Restraining Order

Plaintiff has failed to show that the extraordinary remedy of an *ex parte* temporary restraining order is warranted in this case. Plaintiff has failed to show that the injury is so imminent that notice and a hearing is impractical, if not impossible. As noted, the Local Rules require the Motion to address, among other issues, "the irreparable nature of the threatened injury and the reason that notice cannot be given . . . ." Local R. M.D. Fla. 4.05(b)(4). In the Motion, Plaintiff asserts, in conclusory fashion, that "the injury is so imminent that notice and a hearing for the preliminary injunction is impractical, if not impossible," and, therefore, "immediate injunctive

---

[3] Because the Court declines to find, based on the present record, that Defendants' communications threaten the litigation's proper function, it need not address Plaintiff's request for the Court to void certain releases.

relief should be granted to preserve the status quo." (Doc. 10 at 4). The former assertion is taken verbatim from the language of Local Rule 4.05(b)(2), which is predicated on the Federal Rules' requirements for a court that issues a temporary restraining order without notice to the adverse party. *See* Local R. M.D. Fla. 4.05(b)(2) (citing Fed. R. Civ. P. 65(b)); Fed. R. Civ. P. 65(b). However, Plaintiff fails to provide any explanation for why the injury is so imminent that notice is impractical, if not impossible. Plaintiff's conclusory assertion is wholly insufficient to explain the basis for requesting the Court to issue the relief without providing notice to Defendants.

This failure is particularly puzzling in light of Plaintiff's attempt to provide notice to Defendants. Indeed, the Motion includes a Local Rule 3.01(g) certification, in which Plaintiff certifies that he attempted to confer with Defendants' counsel via e-mail and telephone prior to filing the Motion regarding the requested relief therein with no success.[4] (Doc. 10 at 18). At the time Plaintiff filed the Motion, Defendants had not appeared in the action.[5] Defendants have since appeared, (Doc. 11), and filed a response to the Motion, in which Defendants' counsel asserts that Plaintiff filed the Motion "within three hours of leaving a voicemail at 5:00 p.m. and without waiting for a response," (Doc. 12 at 3). Clearly, providing Defendants with notice of the requested relief was not impractical or impossible, given Plaintiff's efforts.

The Motion is also procedurally deficient because the two proposed orders attached to the Motion fail to strictly accord with Rule 65(b), in violation of Local Rule 4.05(b)(3). The Local Rules require the motion to be "accompanied by a proposed form of temporary restraining order

---

[4] Local Rule 3.01(g) exempts motions for injunctive relief from its scope. Local R. M.D. Fla. 3.01(g).

[5] Defendant first appeared in this action after Plaintiff filed the Motion. (Doc. 11). Plaintiff's filing of executed waivers of service on March 17, 2020, does not demonstrate Defendants' appearance in the action. (Docs. 5, 6, 7).

12

prepared in strict accordance with the several requirements contained in" subsections (b) and (d) of Rule 65. Local R. M.D. Fla. 4.05(b)(3). Both subsection (b) and subsection (d) of Rule 65 set forth requisite contents of an order granting a temporary restraining order. Fed. R. Civ. P. 65(b), (d). In relevant part, Rule 65(b) requires every temporary restraining order issued without notice to "state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered into the record." Fed. R. Civ. P. 65(b)(2). The contents of the two proposed orders vary. The Court assumes, in the absence of any explanation from Plaintiff, that he offers these two proposed orders because he seeks relief under Rules 23(d) and 65 and the first and second proposed orders seek relief under those Rules, respectively. Regardless, neither proposed order states the basis for issuing the order without notice to Defendants. Additionally, while the first proposed order arguably describes the injury, neither proposed order states why such injury is irreparable. Thus, the Motion runs aground of Local Rule 4.05(b)(3).

Additionally, Rule 65 provides that a Court may issue a temporary restraining order without notice to the adverse party or its attorney only if: (1) "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). Even if the Court found that Plaintiff offered specific facts in the affidavits clearly showing that immediate and irreparable injury, loss, or damage would result to Plaintiff before Defendants could be heard in opposition, Plaintiff's attorney did not certify in writing the bases for why notice should not be required. Perhaps that is because Plaintiff's attorney contacted opposing counsel.

Finally, the Motion fails to satisfy the bond requirements of Federal Rule of Civil Procedure 65(c) and Local Rule 4.03(b)(3). Plaintiff fails to address the issue of security in the Motion. Two sentences buried in one of the two proposed orders that Plaintiff attaches to the Motion constitute the only mention of security. This proposed language states that "no security is required under Federal Rule of Civil Procedure 65, at this point in the proceedings, especially since the purpose of this Temporary Restraining Order is to maintain the status quo." (Doc. 10-4 at 2). This proposed order further provides: "Should Defendants make a showing that security is appropriate for the issuance of further injunctive relief, this Court will give further consideration to the matter of security." *Id.*

The Court recognizes that it maintains broad discretion to determine the amount of security and may, if appropriate, waive the security. *Johnston v. Tampa Sports Auth.*, 8:05-cv-2191-T-27MAP, 2006 WL 2970431, at *1 (M.D. Fla. Oct. 16, 2006) (Whittemore, J.) (collecting cases). Notwithstanding the terse assertions in the second proposed order, Plaintiff fails to address in the Motion any basis for the Court's divergence from Rule 65(c) to require no security. Even if the Court construes the language in the proposed order as Plaintiff's attempt to address security, the purported need to preserve the status quo is the only offered basis for bypassing Rule 65(c) to impose an extraordinary remedy on Defendants. This argument falls short, as "one inherent characteristic of a temporary restraining order is that it has the effect of merely preserving the status quo . . . ." *Fernandez-Roque v. Smith*, 671 F.2d 426, 429 (11th Cir. 1982). Plaintiff's effort, through the proposed order, to shift the burden of showing security to Defendants, as the non-moving party, is similarly unavailing, as the language of Rule 65(c) clearly places this burden on Plaintiff. Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only *if the movant* gives security . . . .") (emphasis added).

Relatedly, Plaintiff also fails to set forth facts on which the Court may make a reasoned determination as to the amount of the security, as required by Local Rule 4.05(b)(3). Although the Motion broadly discusses Defendants' alleged offer of $75 goodwill credits, the "numerous" communications to Plaintiff's counsel from prospective class members regarding Defendants' communications, the "tens of thousands of dollars" incurred by "many" prospective class members, the $20,000 in "substantial damage" to Ward, and similar facts, these facts do not supply the Court with the basis to make a reasoned determination as to the amount of security under Rule 65(c). (Docs. 10 at 2–4; 10-1 at 1). The Motion simply lacks facts for the Court to make a reasoned determination as to the amount of security. As such, the Motion runs aground of Rule 65(c) and Local Rule 4.05(b)(3).

In sum, Plaintiff has failed to show that an *ex parte* temporary restraining order is warranted, and the Motion fails to comply with the procedural requirements for the issuance of a temporary restraining order. The Court will therefore deny Plaintiff's request for a temporary restraining order.

### ii. Preliminary Injunction

Plaintiff also requests the issuance of a preliminary injunction against Defendants. (Doc. 10 at 1). Rule 65(c) also requires a party seeking a preliminary injunction to "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). As described above, Plaintiff fails to satisfy Rule 65(c). Further, the Local Rules require a party applying for a preliminary injunction to fully comply with the procedural requirements of Local Rule 4.05(b)(1)– (5). Local R. M.D. Fla. 4.06(b)(1). As also described above, the Motion runs aground of these

procedural requirements. Therefore, the Court will also deny Plaintiff's request for a preliminary injunction.

## IV. CONCLUSION

Accordingly, it is **ORDERED**:

1. Plaintiff's request for relief under Rule 23(d), Fed. R. Civ. P., is **DENIED** without prejudice because, on the instant record, Plaintiff has failed to establish a clear record of abusive communications by Defendants.

2. Plaintiff's Emergency Motion for Temporary Restraining Order, (Doc. 10), is **DENIED** to the extent that Plaintiff requests an *ex parte* temporary restraining order. Plaintiff's request for a preliminary injunction is **DENIED** without prejudice to refiling a Motion for Preliminary Injunction which complies with the Federal Rules of Civil Procedure and the Local Rules of this court.

**DONE AND ORDERED** in Tampa, Florida on March 31, 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any