## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION
### Civil Action No. 8:20-cv-00513-CEH-SPF

| | | |
|---|---|---|
| _____ X | : | |
| | : | **AMENDED** |
| **TRAVIS TAAFFE, and** | : | **CLASS ACTION COMPLAINT** |
| **JARED WARD,** | : | |
| | : | |
| Plaintiffs, | : | **DEMAND FOR JURY TRIAL** |
| | : | |
| vs. | : | |
| | : | |
| | : | |
| **ROBINHOOD MARKETS, INC.,** | : | |
| **ROBINHOOD FINANCIAL LLC, and** | : | |
| **ROBINHOOD SECURITIES, LLC,** | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |
| _____ X | | |

COME NOW Plaintiffs, TRAVIS TAAFFE and JARED WARD on behalf of themselves and the Class of others similarly situated as defined herein, and hereby file this Amended Class Action Complaint against Defendants Robinhood Markets, Inc., Robinhood Financial LLC and Robinhood Securities, LLC, (collectively "Robinhood") and states as follows:

### JURY DEMAND

Plaintiffs hereby demand a trial by jury.

### I. PARTIES

1.      Plaintiff Travis Taaffe is an adult citizen of Florida and resides in Sarasota County, Florida.

2.      Plaintiff Jared Ward is an adult citizen of California and resides in Los Angeles County, California.

3.      At all times material hereto, Plaintiffs Travis Taaffe and Jared Ward acquired the Robinhood mobile phone application and utilized the same to acquire, trade and hold securities in Florida and California.

4.      Defendant Robinhood Markets, Inc. is a corporation formed under the laws of Delaware with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets, Inc. is a financial services holding company and is the parent entity of Defendants Robinhood Financial LLC and Robinhood Securities, LLC.

5.      Defendant Robinhood Financial LLC is a Delaware limited liability company.  Upon information and belief, the sole member of Robinhood Securities, LLC is Robinhood Markets, Inc.  As stated above, Robinhood Securities, LLC is a resident of Delaware and California. Robinhood Financial LLC has a headquarters at 85 Willow Road, Menlo Park, California 94025.

6.      Defendant Robinhood Financial LLC is a registered broker-dealer with the Securities and Exchange Commission.  Defendant Robinhood Financial LLC acts as an introducing broker and has a clearing arrangement with its affiliate Defendant Robinhood Securities, LLC.

7.      Defendant Robinhood Securities, LLC is a Delaware limited liability company.  Upon information and belief, the sole member of Robinhood Securities, LLC is Robinhood Markets, Inc.  As stated above, Robinhood Securities, LLC is a resident of

Delaware and California.  Robinhood Securities, LLC has a headquarters at 500 Colonial Center Parkway, Suite 100, Lake Mary, FL 32746.

8.      Defendant Robinhood Securities, LLC is a registered broker-dealer with the Securities and Exchange Commission. Defendant Robinhood Securities, LLC acts as a clearing broker and clears trades introduced by its affiliate Defendant Robinhood Financial LLC.

## II. JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction over this matter under the Class Action Fairness Act and 28 U.S.C. §1332.  The aggregate claims of the proposed class members exceed $5,000,000.00, exclusive of interest and costs, and there are more than 100 putative class members. Plaintiffs, as well as many members of the proposed class, are citizens of a state different than Defendants.

10.      Venue is appropriate in this District pursuant to 28 USC § 1391(b)(2) as Robinhood Securities, LLC has a headquarters in this District wherein a substantial part of the events and omissions that give rise to the claims alleged herein occurred or emanated from this District.

## III. FACTUAL ALLEGATIONS

**A.      Robinhood's Securities Brokerage Services Were Unavailable to All Customers and/or Users between March 2, 2020 and March 9, 2020**

11.      Robinhood provides "commission-free" trades in stocks, funds and options using an internet/cloud-based platform for individual customers and/or users.

12.     Robinhood publicly advertises its trading platform as state of the art, exceptionally fast and the future of the financial services industry. Robinhood states that trades need to be made exceptionally fast because, as Robinhood states:

> In the stock market, a fraction of a second can mean the difference between a profit and a loss. Our team has built low-latency trading systems used by some of the world's largest financial institutions, and we're bringing that expertise to Robinhood. As a Robinhood customer, your self-directed orders will receive the best possible trade execution.

13.     Robinhood offers these services to its customers and/or users through its internet-based platform as an alternative to the traditional financial services provided in person, over the telephone or via electronic communication.

14.     On Monday March 2, 2020, the Dow Jones Industrial Average rose over 1,294 points, the S&P 500 rose 136 points, and the Nasdaq rose 384 points in what was the biggest ever point gain in a single day in the markets.

15.     On this same day, Robinhood's entire trading platform was completely inaccessible and unavailable to all of its customers and/or users. Thus, customers and/or users were not even able to access their cash, securities and/or other property kept on the Robinhood platform, let alone use Robinhood's services to buy, sell or trade securities. Various Robinhood platform outages continued through and including March 9, 2020.

16.     In a March 2, 2020 email to its customers and/or users Robinhood stated, "This morning, starting at 9:33 AM ET, we started experiencing downtime across our platform. These issues are affecting functionality on Robinhood, including your ability to trade."

17.     It was not until 2:19 am on March 3, 2020 that Robinhood announced publically on its Twitter account that, "Robinhood is currently back up and running. We're testing through the night, and you may observe some downtime as we prepare for tomorrow."

18.     Robinhood's customers and/or users were not able to access Robinhood's platform to engage in any trading activity, to access their funds kept on the platform, to transfer funds onto the system, or to transfer funds off the system for all but 3 minutes of New York Stock Exchange trading hours, 9:30am until 4:00pm on March 2, 2020. There were additional outages of Robinhood's platform on March 3, 2020.

19.     On March 3, 2020, in a blog post on Robinhood's website, Robinhood's co-CEOs admitted liability and that it was Robinhood itself which was solely responsible for their complete failure: "We now understand the cause of the outage was stress on our infrastructure—which struggled with unprecedented load. That in turn led to a "thundering herd" effect—triggering a failure of our DNS system."  As such, Robinhood admits that the platform outages were due to its own failures and expressly waive any defense related to failures of the platform being out Robinhood's control.

20.     On or about March 3, 2020 Robinhood gave Robinhood Gold customers a credit for three months of the Gold subscription fee, amounting to $15.

21.     Robinhood customers and/or users were not able to contact Robinhood during the outages, or Robinhood failed to respond to inquiries from customers and/or users. Robinhood customers and/or users were left with no recourse and were instead in

the position of simply having to wait until Robinhood's platform was back up and running.

22.     By offering trading services to customers and/or users, Robinhood assumed a duty to provide a platform and services equipped to handle reasonably foreseeable customer demands and market conditions such as those which occurred on March 2, 2020 and thereafter. Plaintiffs and members of the Class reasonably understood that Robinhood would undertake this duty. Robinhood failed in its duty to Plaintiffs and Class members due solely to its own failures. Robinhood's failures are even more serious given the magnitude of the outages, the absence of alternative means for customers and/or users to protect their investments and Robinhood's lack of communication and customer support.

23.     Per the Financial Industry Regulatory Authority ("FINRA") regulations, Robinhood had a duty to develop, design, test and monitor their services. Additionally, Robinhood had a duty to create and implement a written business continuity plan outlining procedures to be followed in the event of an emergency or business disruption. As a FINRA Member, Robinhood had a duty to create procedures that would reasonably assist Robinhood in meeting its obligations to its customers and/or users during an emergency or disruption in Robinhood service.

24.     More specifically, FINRA Rule 5310 entitled "Best Execution and Interpositioning" states that Robinhood "must make every effort to execute a marketable customer order that it receives promptly and fully." Robinhood failed in these duties when it failed to provide the platform wherein its customers and/or users could even

place orders. For this reason, Robinhood has breached its obligations and caused Class members substantial damages due solely to Robinhood's own failures.

25.     Robinhood customers and/or users that held options contracts during Robinhood's platform failures and outages were unable to execute those contracts. This meant that customers and/or users were not able to execute the contracts at a gain or to mitigate losses. Given that March 2, 2020 was the first trading date of the month, which is the date on which many options contracts typically expire, Class members who held option contracts were particularly damaged. Additionally, Robinhood customers and/or users who held short positions during the outage were unable to mitigate their losses as stocks surged. These are just some examples of damages sustained by Class members due to Robinhood's own failures.

26.     Beginning on or about March 26, 2020, Robinhood sent misleading correspondence to Class members that purported to offer remuneration for Robinhood's platform failures. This remuneration, which was in the form of a "$75 goodwill credit," was offered to Class members in exchange for a release of any and all claims against Robinhood ("Correspondence" attached as Exhibit 2).

27.     Calling the offered remuneration a "goodwill credit" is misleading on its face, as the offer was not a "goodwill credit," but rather an offer of remuneration made to extinguish Plaintiffs' and Class members' claims.

28.     The Correspondence did not include any mention or notice of the existence of this class action, which renders the correspondence misleading with respect to Robinhood seeking to obtain Class members' waiver of legal claims.

29.     Furthermore,   the   remuneration   offered   by   Robinhood   via   the Correspondence is grossly inadequate to compensate Class members for their damages. In fact, upon information and belief, the fee for a customer and/or user to transfer their funds from Robinhood to another firm or trading platform is $75.

### IV. CLASS ACTION ALLEGATIONS

30.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> Customers and/or users of Robinhood in the United States who lost the ability to access their Robinhood brokerage accounts to effectuate any transaction therein beginning on March 2, 2020 and continuing until the date of class certification in this case.

31.     **Numerosity:** The proposed Class is so numerous that joinder of all members is impracticable.  The precise number of Class members is currently unknown to Plaintiffs, but based upon marketing and other public materials, there are approximately 10 million customers and/or users of Robinhood, all of which are potential members of the Class.

32.     **Commonality:** There are questions of law and fact common to the Class, and those questions predominate over individual questions, including inter alia, the following: whether Robinhood's technology was inadequate to provide financial services that were needed to handle reasonable consumer demand; whether Robinhood failed to provide contingencies to users in the event of a system outage; whether Robinhood violated state consumer protection laws; whether Robinhood violated FINRA Rule 5310; whether Robinhood was in violation of its contracts and/or the covenant of good faith and fair dealing in connection with the failures described herein; and, whether Robinhood

was negligent or grossly negligent by failing to provide financial services in a timely manner.

33. **Typicality:** The claims alleged by Plaintiffs are typical of the claims of the Class, as Plaintiffs were customers and/or users of Robinhood during the class period and were unable to access their accounts to place time-sensitive trades and sustained damages due to Robinhood's wrongful conduct.

34. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained competent counsel experienced in prosecuting complex class actions in the financial services industry and they will vigorously prosecute this action.

35. **Predominance and Superiority:** The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Prosecution of individual actions by individual Class members would create the risk of different or varied adjudications, establishing incompatible standards of conduct for Defendants.

36. Class action certification is warranted under Fed. R. Civ. P. 23(b)(1)(A) because the prosecution of separate actions by individual members of the proposed Class would create the risk of inconsistent or varying adjudications with respect to individual Class members, which may produce incompatible standards of conduct for Defendants.

37. Class action certification is warranted under Fed. R. Civ. P. 23(b)(1)(B) because the prosecution of separate actions by individual members of the proposed Class

would create a risk of adjudications with respect to individual Class members which may, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

38.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive, declaratory, or equitable relief appropriate with respect to the Class as a whole.

39.     Class certification is also warranted under Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to the Class members predominate over any questions affecting only individual members, and a Class action is superior to other available remedies for the fair and efficient adjudication of this controversy. The amount of damages available to the individual Plaintiffs are insufficient to make litigation addressing Defendant's conduct economically feasible for most in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

40.     Class certification is also warranted under Fed. R. Civ. P. 23(c)(4) because questions of law or fact common to the Class members may be certified and decided by this Court on a class-wide basis.

## V. CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

41.     Plaintiffs and Class members adopt and incorporate paragraphs 1 through 40 in full.

42.     Defendants forced Plaintiffs and Class members to consent to the Robinhood Financial LLC & Robinhood Securities, LLC Customer Agreement[1] in order to gain access to the Defendants' trading platform. *Attached as* **Exhibit 1.**

43.     Defendants breached their contractual duties to Plaintiffs and Class members by failing to provide a functioning platform for Plaintiffs and Class members to access their personal funds, securities and/or other property.

44.     Defendants' breach also prevented Plaintiffs and Class members from executing market securities transactions on March 2 and March 3, 2020 and during subsequent outages. This breach caused Plaintiffs and Class members to miss out on some of the highest single-day market gains in recorded history.

45.     Plaintiffs and Class members have all been damaged in a similar manner due to Defendants' breach of contract.

46.     Plaintiffs request relief as hereinafter described.

### COUNT II
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

47.     Plaintiffs and Class members adopt and incorporate paragraphs 1 through 40 in full.

---

[1] Plaintiffs do not have access to an executed copy of same nor are they aware of the existence of one. Exhibit 1 is all that is available and provided to Plaintiffs.

48.     Defendants breached their implied warranty of merchantability by failing to provide a trading platform that is acceptable and reasonably fit for the ordinary purposes for which it was being contracted, in this case, for including but not limited to: the purchase and sale of securities, transferring funds into Robinhood or transferring funds out of Robinhood.

49.      Defendants are merchants with respect to the kind of goods at issue, as Defendants are broker-dealers engaging in the securities markets.

50.     Plaintiffs and Class members have all been damaged in a similar manner due to Defendants breach of implied warranty of merchantability.

51.      Plaintiffs request relief as hereinafter described.

## COUNT III
## NEGLIGENCE

52.     Plaintiffs and Class members adopt and incorporate paragraphs 1 through 40 in full.

53.     Defendants owed a duty to Plaintiffs and Class members to exercise reasonable care in maintaining and supporting Defendants' internet/cloud-based trading platform so that Plaintiffs and Class members would not be adversely affected by extended system failures/outages.  This duty includes, *inter alia*, designing, maintaining, and testing Defendants' trading platform to ensure that the platform is adequately secured and protected from an increase in customer trading volume and user engagement. Defendants had a duty to provide a system and platform robust enough to handle all possible reasonable volumes of trading of securities by customers and/or users and have a backup system to handle outages.  Defendants' duty further includes providing Plaintiffs

and Class members with alternative forms of trading when Defendants' mobile trading application was inaccessible; for instance, providing its customers with a phone number to call in order to execute various trades or to have funds transferred.

54.     Defendants breached their duty to exercise reasonable care in safeguarding and protecting Plaintiffs' and other Class members' assets from the extended system failures experienced on March 2, 2020 and March 3, 2020 and during additional outages. Defendants further breached their duty by failing to provide adequate support to the trading platform to ensure that it could continue to function during an increase in trading volume and user engagement.

55.     Plaintiffs and Class members have all been damaged in a similar manner due to Defendants' negligence.

56.     Defendants' negligence was the direct and proximate cause of the damages suffered by Plaintiffs and the other Class members.

<u>**COUNT IV**</u>
**DECLARATORY RELIEF**

57.     Plaintiffs and Class members adopt and incorporate paragraphs 1 through 40 in full.

58.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201, authorizes this Court to "declare the rights and other legal relations of any interested party seeking such declaration" and grant further necessary relief.

59.     An actual controversy has arisen in regards to Plaintiffs' allegations that Defendants were not in compliance with their obligations under the Customer Agreement, FINRA Rule 5310, and do not maintain an adequate infrastructure to provide

the financial services in a timely manner as it is required by applicable statutes and regulations.

60.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, that Defendants have an ongoing legal duty to comply with the Customer Agreement and various regulatory and statutory requirements, which require Defendants to maintain an adequate infrastructure to handle consumer demands and execute trades and other transactions in a timely manner.

61.     Furthermore, the Court should enter a judgment declaring that Defendants breached the aforementioned legal duty by failing to reasonably ensure that they had an adequate infrastructure in place to prevent the extended outages suffered by their trading platform.

**COUNT V**
**GROSS NEGLIGENCE**

62.     Plaintiffs and Class members adopt and incorporate paragraphs 1 through 40 in full.

63.      Defendants created a series of circumstances which, together, constituted an imminent or clear and present danger amounting to more than the usual peril.

64.     Defendants were aware of the imminent danger. Specifically, Defendants were aware that their trading platform and infrastructure was not properly equipped to support an increase in customer engagement on their platform if the stock market were to exhibit a high volume trading day. Moreover, Defendants failed to provide an alternative means to place trades when their existing platform experienced multiple extended outages.

65.     Defendants' omissions occurred in a manner which demonstrated a conscious disregard for the consequences. Defendants' omissions were an extreme departure from the standard of care that is required in the industry. Defendants effectively abandoned their customers on one of the highest volume trading days the stock market has ever experienced.

66.     Defendants' grossly negligent and conscious disregard of their duty to protect their customers' and/or users' assets was the direct and proximate cause of the damages suffered by the Plaintiffs and other Class members.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

67.     Plaintiffs and Class members adopt and incorporate paragraphs 1 through 40 in full.

68.     Robinhood through their actions and advertisements undertook to provide and did provide a platform for securities trading.

69.     Robinhood provided false information in association with its ability to handle securities transactions placed by customers and/or users. Further, based on previous outages, Robinhood knew or had reason to believe that it was unable to handle increases in securities transactions on their trading platform.

70.     Robinhood failed to use reasonable care and competence in obtaining and communicating information about their inadequate trading platform.

71.     Robinhood had a direct pecuniary interest in their customers and/or users continuing to place funds into their Robinhood accounts without knowledge of Robinhood's faulty systems.

72.     The information provided by Robinhood to Plaintiffs and Class members was false.

73.     The conduct of the Defendants as set forth herein was a direct, proximate and/or contributing cause of the injuries suffered by Plaintiffs and Class members.

<u>COUNT VII</u>
**BREACH OF FIDUCIARY DUTY**

74.     Plaintiffs and Class members adopt and incorporate paragraphs 1 through 40 in full.

75.     Defendants, at all times material hereto, owed a fiduciary duty to Plaintiffs and Class members and owed them the highest good faith and integrity in performing financial services on their behalf. Defendants are a fiduciary to Plaintiffs and Class members by virtue of being a licensed provider of financial services and through the Customer Agreement agreed upon between the parties.

76.     Defendants breached their fiduciary duties to Plaintiffs and Class members. Defendants' breaches include, but are not limited to: failing to provide and maintain adequate systems necessary to handle an uptick in consumer traffic on its trading platform; failing to warn customers and/or users that Defendants' system and infrastructure was insufficient; failing to provide alternative means to execute trades or other transactions when Defendants' platform failed for an extended period of time; failing to comply with all applicable statutory, regulatory, and licensing requirements; failing to execute trades and other transactions on behalf of customers and/or users in violation of FINRA Rule 5310 and other applicable statutory, regulatory, and licensing requirements.

77.     Defendants' breach of their fiduciary duty was the direct and proximate cause of the damages suffered by Plaintiffs and Class members.

**COUNT VIII**
**VIOLATION OF FLORIDA'S DECEPTIVE AND**
**UNFAIR TRADE PRACTICES ACT**

78.     Plaintiffs and Class members adopt and incorporate paragraphs 1 through 40 in full

79.     Section 501.201, et seq., Florida Statutes, prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

80.     Plaintiffs and the Class they seek to represent are "consumers" as that term is defined in Section 501.203(7), Florida Statutes.

81.     Plaintiffs and Class members have standing to pursue this claim as they have suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth herein.

82.     Defendants have engaged in, and continue to engage in, unconscionable acts or practices and used unfair or deceptive acts in the conduct of its trade and/or commerce in the State of Florida.

83.     Defendants' business practices, as alleged herein, are "unfair" because they offend established public policy and are immoral, unethical, unscrupulous, and substantially injurious to their customers and/or users. Specifically, Defendants' conduct is unfair because Defendants strategically and purposefully misled customers and/or users

into believing that their trading platform was capable and powerful enough to handle the millions of Robinhood users and reasonable trading volume related to the same.

84.     Furthermore, Defendants' business practices, as alleged herein, are "deceptive" because they are likely to deceive consumers, including Plaintiffs and the Class they seek to represent.

85.     The policies, acts, practices, and promotions alleged herein were intended to result and did result in the luring in of customer monies to be placed in Robinhood accounts. Robinhood advertised and promoted a robust securities trading platform in an attempt to accumulate more and more customer cash and users, from which Robinhood benefits.

86.     Robinhood took advantage of the trust and confidence of Plaintiffs and the Class they seek to represent, and deceptively advertised their system as a trustworthy trading platform even though Robinhood had full and exact knowledge of their systems prior failures and inability to handle reasonable user trading volume.

87.     Robinhood's conduct of misrepresenting their flawed trading system to Plaintiffs and the Class they seek to represent misled Plaintiffs and Class members into believing that the Robinhood trading platform was a safe and able system to house their own personal monies and securities.

88.     Plaintiffs and the Class they seek to represent sustained damages as a direct and proximate result of Defendants' unfair and unconscionable practices. Section 501.211(2), Florida Statutes, provides Plaintiffs and the Class they seek to represent a

private right of action against Robinhood and entitles them to recover their actual damages, plus attorneys' fees and costs.

89.     As a result of Robinhood's unfair conduct and deception, Plaintiffs and the Class they seek to represent have been damaged in that Defendants' inept system caused Plaintiffs' and Class members' personal finances to be held hostage on multiple dates and times between March 2, 2020 and March 9, 2020. This unconscionable locking up of customer finances caused Plaintiffs and Class members damages.

90.     Plaintiffs and the Class they seek to represent would have never entrusted their personal finances with the Defendants had the Defendants been honest, truthful, and forthcoming in regards to their known system failures and shortcomings.

91.     Defendants' wrongful business practices alleged herein constitute a continuing course of unfair competition because Robinhood marketed or sold their Robinhood trading platform in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers and/or users. Plaintiffs and the Class they seek to represent have been damaged by Defendants' deceptive and unfair conduct in that they entrusted and utilized Defendants' ineffective securities trading platform that they otherwise would not have used had Defendants not misrepresented the product.

92.     Plaintiffs and the Class they seek to represent have suffered and will continue to suffer irreparable harm if Defendants continue to engage in such deceptive, unfair, and unreasonable practices.

**<u>COUNT IX</u>**
**FRAUDULENT MISREPRESENTATION**

93.   Plaintiffs and Class members adopt and incorporate paragraphs 1 through 40 in full.

94.   Defendants by and through their agents, made or caused to be made, *inter alia*, the following fraudulent misrepresentations, omissions, or misleading statements to Plaintiffs and Class members:

a.      That the $75 offered to Plaintiffs and Class members to waive their claims was simply a "goodwill credit";

b.      Purposefully withheld from Plaintiffs and Class members that there was an ongoing class action; and,

c.      Withheld the fact that Plaintiffs and Class members' acceptance of the $75 goodwill credit would waive the ability for Plaintiffs and Class members to pursue further legal action.

95.   Defendants   knew   that   their   misrepresentations/omissions   were false/wrongfully misleading when they made them to the Plaintiffs and Class members through the communications outlined above. Alternatively, the Defendants made these representations/omissions with a conscious disregard of the rights and interests of Plaintiffs and Class members, and for the purpose of enriching themselves and jeopardizing the financial well-being of Plaintiffs and Class members.

96.   The Defendants acted knowingly, oppressively, and with the intent to defraud the Plaintiffs and Class members.

97.  Defendants intended for Plaintiffs and Class members to rely on each of these misrepresentations and/or omissions in order to get the Plaintiffs and Class members to accept the $75 in exchange for waiving their legal rights to pursue further claims.

98.  Many Class members justifiably relied on each of these misrepresentations and/or omissions made by Defendants due to Defendant's willful and strategic vagueness and concealment of the waiver provision of the wrongfully categorized "goodwill credit."

99.  Defendants' conduct as set forth herein was a direct, proximate and/or contributing cause of the injuries suffered by Plaintiffs and Class members.

<u>**COUNT X**</u>
**VIOLATION OF CALIFORNIA'S CONSUMER LEGAL**
**REMEDIES ACT, CAL. CIV. CODE §§ 1750, *et seq.***

100.   Plaintiffs and Class members adopt and incorporate paragraphs 1 through 40 in full.

101.  The California Legal Remedies Act ("CLRA") Civil Code Section 1750, *et seq.*, was drafted and enacted to protect consumers from unfair and deceptive business practices. The CLRA sets forth a list of unfair and deceptive acts and practices in Civil code § 1770.

102.  The CLRA applies to Robinhood's conduct described in this action because it extends to the transactions involving the sale of goods or services for personal, family, or household use within the meaning of Civil Code § 1761.

103.  At all relevant times, Plaintiffs and Class members were "consumers" as that term is defined in Civil Code § 1761(d).

104.  Robinhood's practices with regard to its marketing and sale of financial services violate the CLRA in, but not limited to, the following ways:

a.   In violation of § 1770(a)(5), Robinhood knowingly misrepresented its services;

b.   In violation of § 1770(a)(7), Robinhood represented its financial services to be of a particular standard, quality, or grade, but were not; and,

c.   In violation of § 1770(a)(9), Robinhood knowingly advertised its financial services with the intent not to sell and perform the services as advertised.

105.  As set forth above, Robinhood's services are deceptive and misleading to reasonable consumers in violation of the CLRA because it failed to disclose that its platform was inadequately built and maintained to handle consumer demand; because Robinhood failed to provide adequate technological systems necessary to perform under the contract with users; because Robinhood failed to provide services when an outage occurred due to a lack of infrastructure and alternate means for users to place timely trades; because Robinhood failed to provide access to its financial services in a timely manner; because Robinhood's platform was subject to and did experience substantial outages that prohibit the Parties from performing a timely manner (or at all) under the contract; because Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and because Robinhood failed to exercise trades and actions requested by users in a complete and timely manner (required by FINRA Rule 5310).

106.  Robinhood's conduct described herein was undertaken in transactions intended to result in, and which did result in, the purchase of its financial services by

consumers, which caused harm to Plaintiffs and Class members who would not have used Robinhood's services had they known the truth. Plaintiffs and Class members were in fact injured by losses incurred due to Robinhood's deceptive conduct.

107. The CLRA is by its express terms a cumulative remedy such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in other counts of this Amended Complaint. *See* Cal. Civ. Code § 1752.

108. In accordance with Civil Code § 1780, Plaintiffs and class members seek injunctive and equitable relief for Robinhood's violations of the CLRA necessary to bring it in compliance with the CLRA by, among other things, disclosing that its services are substandard and unable to fulfill reasonable consumer demand, by correcting its services to that its platform can perform as necessary to comply with its legal, regulatory, and contractual obligations, and making consumers whole for their losses.

109. In accordance with Civil Code § 1780, the Plaintiffs served a notice pursuant to Civil Code § 1782, via a certified letter, return receipt requested, requesting appropriate relief on or about April 1, 2020. Should Robinhood fail to respond to Plaintiffs' CLRA demand in a satisfactory manner, Plaintiffs will further amend this Amended Complaint to seek damages after expiration of the notice period.

### COUNT XI
### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

110. Plaintiffs and Class members adopt and incorporate paragraphs 1 through 40 in full.

111.   Robinhood has engaged in unfair competition within the meaning of California Business and Professions Code §§ 17200, *et seq.*, because Robinhood's conduct is unlawful, unfair and fraudulent as herein alleged.

112.   Plaintiffs, Class members, and Robinhood are a "person" or "persons" within the meaning of §17201 of the California Unfair Competition Law ("UCL").

113.   The UCL prohibits any unlawful, unfair or fraudulent business practices or acts. Robinhood's conduct, as alleged herein, constitutes and unlawful, unfair and fraudulent business practice that occurred in connection with the marketing, advertisement, and sale of its services.

114.   Robinhood's misleading and deceptive misrepresentations and omissions, concealment and suppression of material fact, as described herein, violated the UCL's unlawful, unfair and fraudulent prongs.

115.   **Unlawful Prong:** Robinhood's conduct, as described herein, violated the UCL's unlawful prong because: (1) it violates the CLRA in connection with the sale of goods and services; (2) constitutes a breach of contract and/or a breach of the implied covenant of good faith and fair dealing; (3) constitutes a breach of fiduciary duty; (4) constitutes negligence and/or gross negligence; (5) it violates FINRA Rule 5310 which requires best execution of orders fully and promptly; and, (6) has unlawfully and unjustly enriched Robinhood.

116.   **Unfair Prong:** Robinhood's conduct, as described herein, violated UCL's unfair prong because its conduct violates established public policy intended to regulate the fair and ethical sale of goods and services to consumers as set forth in the CLRA and

FINRA , and because it is immoral, unethical, oppressive or unscrupulous and has caused injuries to the Plaintiffs and Class members that outweigh any purported benefit. At all times relevant herein, Robinhood's conduct of misrepresenting and concealing material facts regarding its faulty infrastructure and refusal to timely perform from the Plaintiffs and consumers caused them injury by inducing them to use Robinhood's services they would not have otherwise, causing losses to them. The utility of Robinhood's conduct in misrepresenting and concealing material facts from the Plaintiffs and Class members is far outweighed by the gravity of harm to consumers who have now incurred losses they would not have otherwise.

117. **Fraudulent Prong:** Robinhood's conduct, as described herein, violated UCL's fraudulent prong by misrepresenting and concealing material information that caused, or would likely cause, Plaintiffs and Class members to be deceived into using Robinhood's services they would not have otherwise. At all times Robinhood has had exclusive knowledge of its substandard infrastructure that led to the outages. Plaintiffs and Class members have been harmed and sustained injury as a result of Robinhood's fraudulent conduct in violation of UCL as explained herein.

118. Plaintiffs have standing to pursue this claim because they have been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein. Plaintiffs would not have used Robinhood's services and/or placed trades and made financial transactions through those services had they known the truth, though they have an interest in continuing to use the services in the future should Robinhood fix the problems set forth in this Amended Complaint. As a direct result of Robinhood's

actions and omissions of material facts, Plaintiffs and Class members were unlawfully, unfairly, and fraudulently induced to make purchases and financial transactions that they otherwise would not have made; and lost their ability to make informed and reasoned purchasing decisions.

119.  The UCL is, by its express terms a cumulative remedy such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in other counts of this Amended Complaint. *See* Cal. Bus & Prof. Code § 17205. As a direct and proximate cause of Robinhood's conduct, which constitutes unlawful, unfair, and fraudulent business practices, as alleged herein, Plaintiffs and Class members have been damaged and suffered ascertainable losses, thereby entitling them to recover restitution and equitable relief, including disgorgement of ill-gotten gains, refunds of moneys, interest, reasonable attorney's fees, filing fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or in equity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court find in favor of them and the Class of similarly situated individuals and against Defendants as follows:

a.      Certify this case as a class action;

b.      Designate Plaintiffs as Class Representatives;

c.      Designate Plaintiffs' counsel of record as Class Counsel;

d.      Order appropriate equitable relief to remedy the inappropriate conduct;

e.     Award Plaintiffs and all others similarly situated the full value of all damages sustained now or in the futures as a result of Defendants' conduct;

f.     Award Plaintiffs and all others similarly situated all damages, interest and attorneys' fees recoverable under applicable laws;

g.     Award Plaintiffs and all others similarly situated punitive damages, compensatory, other damages, restitution or disgorgement;

h.     Order injunctive relief including but not limited to an Order requiring that: Defendants' systems are capable of handling its customers' and/or users' securities transactions even in a time of heavy trading volume; requiring Defendants to implement adequate redundancy or backup processes to ensure that should a system outage occur there is another avenue for customers and/or users to access, control and trade their cash, securities and/or other property; and injunctive relief voiding any and all releases obtained through the misrepresentations made to Plaintiffs and Class members regarding "Goodwill Credits."

i.     Award Plaintiffs and all others similarly situated any and all other relief as this Court deems just and proper; and

j.     That this matter be tried by a jury.

[*Signature on Page Below*]

Dated:  April 7, 2020                        Respectfully submitted,

By: _/s/Michael S. Taaffe____
Michael S. Taaffe
Florida State Bar No. 490318
Michael D. Bressan
Florida State Bar No. 0011092
Jarrod J. Malone
Florida State Bar No. 0010595
Shumaker, Loop & Kendrick, LLP
240 South Pineapple Ave., 10th Floor
Sarasota, Florida 34236
Telephone:  (941) 366-6660
Facsimile:  (941) 366-3999
E-Mail:  mtaaffe@shumaker.com
E-Mail:  mbressan@shumaker.com
E-Mail:  jmalone@shumaker.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 7, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will give notice to all the parties.

By: _/s/Michael S. Taaffe____
Michael S. Taaffe
Florida State Bar No. 490318
Michael D. Bressan
Florida State Bar No. 0011092
Jarrod J. Malone
Florida State Bar No. 0010595
Shumaker, Loop & Kendrick, LLP
240 South Pineapple Ave., 10th Floor
Sarasota, Florida 34236
Telephone:  (941) 366-6660
Facsimile:  (941) 366-3999
E-Mail:  mtaaffe@shumaker.com
E-Mail:  mbressan@shumaker.com
E-Mail:  jmalone@shumaker.com
*Attorneys for Plaintiffs*